# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIJENDRA DEO,<br><br>    Plaintiff,<br><br>   v.<br><br>LORETTA E. LYNCH, et al.,<br><br>    Defendants. | Case No. 1:16-cv-00825-SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 9, 13, 15)<br><br>ORDER DIRECTING THE CLERK OF THE COURT TO LODGE PLAINTIFF'S ALIEN FILE<br><br>(ECF No. 14) |

Currently before the Court is Defendants' motion to dismiss this action for lack of jurisdiction. The parties have consented to the jurisdiction of the magistrate judge. (ECF Nos. 4, 7.)

Oral argument on the motion to dismiss was heard on September 20, 2016. Counsel Ben Loveman appeared for Plaintiff and counsel Audrey Hemesath appeared for Defendants. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the September 20, 2016 hearing, as well as the Court's file, the Court issues the following order.

## I.

## BACKGROUND

Plaintiff Vijendra Deo is a native of Fuji and has been a lawful permanent resident of the United States since July 12, 1989. (Compl. ¶ 9, ECF No. 1.) On December 18, 2003, Plaintiff was convicted of one charge of domestic violence pursuant to California Penal Code section

1

273.5(a) and sentenced to 4 years in state prison with his sentence suspended; 36 months of formal probation; and 180 days in custody on weekender/work release program. (Compl. ¶ 11.) Plaintiff completed his sentence. (Id.)

On July 22, 2010, the Department of Homeland Security ("DHS") instituted removal proceedings against Plaintiff based upon his December 18, 2003 conviction. (Compl. ¶ 15.) On September 30, 2010, Plaintiff's conviction was reduced from a felony to a misdemeanor pursuant to California Penal Code section 17(b)(3). (Compl. ¶¶ 11, 13.)

During the removal proceedings, Plaintiff admitted the charges, conceded removability, and informed the immigration judge that he would seek relief from removability through an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). (Compl. ¶¶ 17, 18.) DHS informed the immigration judge that Plaintiff's conviction record could only be construed to contain an aggravated felony conviction if the sentence of four-years as reflected in the original conviction was used to determine the sentence imposed. (Compl. ¶ 19.) On September 19, 2014, the Immigration Judge granted Plaintiff's application for cancellation of removal. (Compl. ¶ 21.)

On December 10, 2014, Plaintiff filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS"). (Compl. ¶ 24.) Plaintiff appeared for an interview in relation to his application on May 4, 2015. (Compl. ¶ 25.) On May 21, 2015, the USCIS issued a request for evidence seeking additional documentation regarding Plaintiff's conviction. (Compl. ¶ 26.) Plaintiff provided the requested evidence and an explanation as to why his conviction was not an aggravated felony on June 10, 2015. (Compl. ¶ 27.)

On November 17, 2015, Plaintiff received an undated decision from the USCIS denying his application for naturalization because it was determined that Plaintiff's prior conviction constituted an aggravated felony crime of violence as defined at 8 U.S.C. § 1101(a)(43)(F) and was precluded by 8 U.S.C. §1101(f)(8) as establishing good character as required under 8 U.S.C. § 1427(a)(3). (Compl. ¶¶ 28, 29.) The decision recognized the prior grant of cancellation of removal, but states "the relief…only pertains to [Plaintiff's] removability from the United States; it does not change the fact that you . . . have been convicted of an aggravated felony for the

1   purposes of naturalization." (Compl. ¶ 30.)  On November 17, 2015, Plaintiff filed a request for

2   reconsideration with USCIS.  (Compl. ¶ 31.)  USCIS denied the request for reconsideration.

3   (Compl. ¶ 32.)

4          On June 13, 2016, Plaintiff filed this action against Defendants Leon Rodriguez, Jeh

5   Johnson, Lynn Quan Feldman, and Loretta Lynch seeking for this Court to assume jurisdiction

6   over his application for naturalization, conduct a de novo review of the application, and grant the

7   application and award attorney fees and cost.  (ECF No. 1.)  Plaintiff contends that he meets all

8   the requirements for naturalization pursuant to 8 U.S.C. § 1427; and that the DHS is precluded

9   from determining that he has been convicted of an aggravated felony due to the prior

10  determination in the cancellation of removal proceedings.  (Compl. ¶¶ 33, 42, 43.)  Defendants

11  filed a motion to dismiss for lack of jurisdiction on August 9, 2016.[1]  (ECF No. 9.)  Plaintiff filed

12  an opposition on August 30, 2016.  (ECF No. 13.)  On September 9, 2016, Defendants lodged

13  Plaintiff's alien file.[2]  (ECF No. 14.)  On September 12, 2014, Defendants filed a reply.  (ECF

14  No. 15.)

15                                          **II.**

16                                    **LEGAL STANDARD**

17         Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

18  the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

19  complaint must contain "a short and plain statement of the claim showing that the pleader is

20  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not

21  require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

---

22  [1] Defendants' motion title seeks dismissal for lack of jurisdiction, but the document argues dismissal for failure to

23  state a claim.  Based upon the argument in Defendants' motion, the Court determines that this is
    appropriately a motion raised under Rule 12(b)(6).  Defendants argue that Plaintiff is unable to state a claim because

24  he is unable to obtain the relief he seeks in this action.  Further, as Defendants state in their motion to dismiss, this
    Court has jurisdiction under 8 U.S.C. § 1421(c) which provides that, after a naturalization application is denied, the

25  party may seek review of the denial before the United States district court.

26  [2] Defendants filed a notice of filing in paper format pursuant to Local Rule 133.  However, Local Rule 133 provides
    that all documents are to be filed in electronic format, except where a party is proceeding pro se.  L.R. 133(a).

27  While the rule does provide a means by which a party can seek permission to file documents in paper format no such
    permission was sought or received in this case.  As this is a motion to dismiss, the Court does not consider

28  Plaintiff's alien file in deciding the motion.  For that reason, the Court shall have the Clerk of the Court lodge the
    document.

1    unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

2    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   In assessing the sufficiency of a

3    complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-

4    79.   However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5    conclusory statements, do not suffice."  Id. at 678.

6        In deciding whether a complaint states a claim, the Ninth Circuit has found that two

7    principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

8    "may not simply recite the elements of a cause of action, but must contain sufficient allegations

9    of underlying facts to give fair notice and to enable the opposing party to defend itself

10   effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair

11   to require the defendant to be subjected to the expenses associated with discovery and continued

12   litigation, the factual allegations of the complaint, which are taken as true, must plausibly

13   suggest an entitlement to relief.  Starr, 652 F.3d at 1216.

14                                              **III.**

15                                          **ANALYSIS**

16       The parties agree that the sole issue to be decided in this action is whether Plaintiff's

17   conviction under California Penal Code section 273.5(a) is an aggravated felony.  Defendants

18   argue that Plaintiff's grant of cancelation of removal in immigration court is not binding on the

19   USCIS in its independent evaluation of his naturalization application and seeks that this

20   complaint be dismissed in its entirety for failure to state a claim.  Plaintiff counters that the

21   complaint contains sufficient factual allegations which if taken as true suggest an entitlement to

22   relief and disputed issues of fact exist as to whether the conviction is an aggravated felony.

23   Defendants reply that although Plaintiff's conviction was reduced to a misdemeanor his sentence

24   was not changed; and therefore, Plaintiff's sentence remains an aggravated felony for

25   immigration purposes.

26       While Plaintiff argues that there are sufficient facts alleged to state a cognizable claim, a

27   motion to dismiss can be based upon the absence of sufficient facts alleged to state a claim under

28   a cognizable legal theory or the lack of a cognizable legal theory.  Balistreri v. Pacifica Police

                                                   4

1   Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  In this instance, Defendants are arguing that Plaintiff's

2   claim fails to state a cognizable claim for relief because he is not entitled to the relief he seeks.

3          **A.     Plaintiff's Suspended Sentence Qualifies as an Aggravated Felony**

4          Defendants argue that it is irrelevant that Plaintiff received a suspended sentence because

5   the Ninth Circuit has made it clear that a suspended sentence meets the aggravated felony

6   definition under 8 U.S.C. § 1101(a)(43).  Plaintiff does not address the suspended sentence.

7          Pursuant to section 1101, as relevant here, an aggravated felony is a crime of violence for

8   which the term of imprisonment is at least one year.  8 U.S.C. § 1101(a)(43)(F).  Under federal

9   law a crime of violence is

10           (a) an offense that has as an element the use, attempted use, or threatened use of
             physical force against the person or property of another, or

11

12           (b) any other offense that is a felony and that, by its nature, involves a substantial
             risk that physical force against the person or property of another may be used in
13           the course of committing the offense.

14   18 U.S.C. § 16.  The Ninth Circuit has held that a violation of section 273.5(a)[3] is a categorical

15   crime of violence under 18 U.S.C. § 16(a).  Banuelos-Ayon v. Holder, 611 F.3d 1080, 1086 (9th

16   Cir. 2010); see also Carrillo v. Holder, 781 F.3d 1155, 1159 (9th Cir. 2015), cert. denied sub

17   nom. Marquez Carrillo v. Lynch, 136 S. Ct. 1217 (2016) ("§ 273.5 is categorically a crime of

18   domestic violence within the meaning of § 1227(a)(2)(E)(I)"); United States v. Ayala-Nicanor,

19   659 F.3d 744, 753 (9th Cir. 2011) ("a conviction under California Penal Code § 273.5 is a

20   categorical crime of violence for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii)").

21          In United States v. Eschavarria-Escobar, 270 F.3d 1265 (9th Cir. 2001), the Ninth Circuit

22   considered whether a suspended sentence should be considered part of the term of imprisonment

23   in determining whether a sentence was an aggravated felony under section 1101(a)(43).  270

24   F.3d at 1268.  The Ninth Circuit agreed with the First, Second, Third, Fifth, Eighth, Tenth, and

25   Eleventh circuits that "a sentence that has been imposed, and subsequently suspended,

26

27   [3] Section 273.5(a) provides that "[a]ny person who willfully inflicts corporal injury resulting in a traumatic condition
     upon a victim described in subdivision (b) is guilty of a felony, and upon conviction thereof shall be punished by
28   imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a
     fine of up to six thousand dollars ($6,000), or by both that fine and imprisonment."

constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)." Id. at 1269-70.

Plaintiff was sentenced to 4 years in state prison with his sentence suspended for violation of California Penal Code Section 273.5(a).  Plaintiff's original conviction qualifies as an aggravated felony pursuant to 8 U.S.C. § 1101(a).  Therefore, the Court considers whether the reduction of the sentence to a misdemeanor pursuant to California Penal Code section 17(b) changes the character of the conviction.

**B.      Reduction to Misdemeanor Does Not Change the Sentence for Immigration Purposes**

Defendants next argue that the fact that Plaintiff's conviction was reduced from a felony to a misdemeanor pursuant to California Penal Code section 17(b) does not affect the immigration consequences of the conviction.  Plaintiff responds that the sentence of four years does not survive the reduction to a misdemeanor.  Defendants reply that while Plaintiff's conviction was reduced to a misdemeanor his request to modify the sentence was denied; and therefore, the conviction remains a felony for immigration purposes.[4]

Plaintiff argues that there is a disputed fact to survive this motion to dismiss because Plaintiff's conviction was reduced to a misdemeanor.  Plaintiff argues that since the four year sentence cannot survive the reduction it is unclear what his sentence was.   However, in considering whether a conviction qualifies as an aggravated felony under section 1101(a)(43), the Court does not consider whether it is labeled as a felony or a misdemeanor under state law.  United States v. Gonzalez-Tamariz, 310 F.3d 1168, 1170 (9th Cir. 2002), as amended on denial of reh'g and reh'g en banc (Jan. 13, 2003).  "The relevant question is whether the crime meets the definition of an 'aggravated felony' under federal sentencing law."  Gonzalez-Tamariz, 310

---

[4] The parties have submitted records from Plaintiff's prior state court case for the Court's consideration in this motion to dismiss.  As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion.  United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011).  There are two exceptions to this rule, when the complaint necessarily relies on the documents or where the court takes judicial notice of documents.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689.  The Court takes judicial notice of the records from Plaintiff's state court conviction.

1   F.3d at 1170.   In <u>Gonzalez-Tamariz</u> the Ninth Circuit agreed with other circuits which have

2   found that "Congress was defining a term of art, 'aggravated felony,' which . . . includes certain

3   misdemeanants who receive a sentence of one year."   <u>Id.</u>   Accordingly, "[a]n offense classified

4   as a misdemeanor under state law may therefore be considered an aggravated felony for

5   sentencing purposes if it meets the requirements of 8 U.S.C. § 1101(a)(43)."   <u>Id.</u> at 1170-71; <u>see</u>

6   <u>also</u> <u>de Jesus Melendez v. Gonzales</u>, 503 F.3d 1019, 1027 (9th Cir. 2007) (finding that an

7   expunged conviction still qualifies as an aggravated felony for immigration purposes).

8        In <u>Ceron v. Holder</u>, 747 F.3d 773, 777 (9th Cir. 2014), the Ninth Circuit considered how

9   a conviction for a violation of a statute that could be charged as a misdemeanor or a felony, also

10  known as a wobbler, affected the immigration consequences for the purposes of 8 U.S.C. §

11  1227(a)(2)(A)(i)(II).   The Circuit overruled two prior cases that had found that a conviction for a

12  misdemeanor meant that the defendant's maximum possible penalty under California law was six

13  month's imprisonment.   <u>Ceron</u>, 747 F.3d. at 778.   California Penal Code section 19 specifies that

14  the maximum penalty for a misdemeanor is six months imprisonment in county jail, except

15  "where a different punishment is prescribed by any law of this state."   <u>Id.</u> (citing Cal. Penal Code

16  § 19).

17       The Ninth Circuit recently held in an unpublished case that a conviction under section

18  273.5(a) that was reduced from a felony to a misdemeanor remained an aggravated felony for

19  immigration purposes.   <u>Sarmiento v. Lynch</u>, 603 F.App'x 623, 625 (9th Cir. 2015).[5]   Similar to

20  the instant action, the plaintiff's conviction had been reduced from a felony to a misdemeanor

21  pursuant to California Penal Code section 17(b).   <u>Sarmiento</u>, 603 F.App'x at 624.   The Court

22  rejected Sarmiento's argument that reduction from a felony to a misdemeanor pursuant to

23  California Penal Code section 17(b) reduced the maximum penalty available under state law to

24  six months imprisonment and found that the conviction still qualified as an aggravated felony

25  despite the reduction to a misdemeanor.   <u>Id.</u> at 625.

26

27  _____

[5] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the
courts of this circuit in accordance with FRAP 32.1.   Ninth Circuit Rule 36-3(b); <u>see</u> <u>Animal Legal Def. Fund v.</u>

28  <u>Veneman</u>, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even
unpublished dispositions and unpublished orders as persuasive authority").

1    The statute at issue here, California Penal Code section 273.5(a), proscribes that a

2  violation shall be punished by imprisonment in the state prison for two, three, or four years, or in

3  a county jail for not more than one year.   Accordingly, although Plaintiff's conviction was

4  reduced to a misdemeanor, he could still have been sentenced to one year in county jail.   As

5  discussed above, an aggravated felony is a crime of violence for which the term of imprisonment

6  is **at least one year**.   8 U.S.C. § 1101(a)(43)(F) (emphasis added).   While Plaintiff's conviction

7  was reduced from a felony to a misdemeanor, he was sentenced to a period of at least one year

8  and the conviction meets the aggravated felony definition of 8 U.S.C. § 1101(a)(43)(F).

9    Plaintiff cites two Immigration cases which the Court finds to be distinguishable.   In In

10  Re Cota-Vargas, 23 I. & N. Dec. 849 (BIA 2005), the plaintiff sought to have his 365 day

11  sentence reduced or eliminated to avoid the adverse immigration consequences and the state

12  court granted his request.   In Re Cota-Vargas, 23 I. & N. Dec. at 850.   The BIA found that "[f]or

13  I.N.S. purposes, it apparently is irrelevant whether the imposed custody is stayed or actually

14  served.   What is important is whether the term imposed is less than 365 days."   Id.   Since the

15  sentence had been modified to 240 days, the plaintiff was not "presently" convicted of an offense

16  for which the term of imprisonment was at least one year and the conviction was not an

17  aggravated felony.   Id. at 852-53.

18    Similarly in In Re Song, 23 I. & N. Dec. 173 (BIA 2001), the plaintiff's sentence had

19  been reduced to 360 days.   In Re Song, 23 I. & N. Dec. at 173-74.   Where an alien has been

20  resentenced, the new sentence determines whether he had received a sentence of less than one

21  year for the purposes of determining if it was an aggravated felony.   Id. at 174.

22    While Plaintiff argues that the four year sentence cannot survive the reduction to a

23  misdemeanor, in this instance, his request for a sentence reduction was denied.   February 15,

24  2012 Minute Order of Superior Court of California, ECF No. 15-1.   Plaintiff's sentence for the

25  conviction of California Penal Code section 273.5(a) was for at least one year and has not been

26  reduced.   Accordingly, Plaintiff has been convicted of an aggravated felony for immigration

27  purposes.

28  / / /

C.      **Prior Findings of Cancellation of Removal**

Defendants argue that the prior findings made in the cancellation of removal proceedings have no effect in this matter.  Plaintiff disagrees with all factual and legal points raised by Defendants in the motion to dismiss and argues that a review of the administrative record is required to determine if issue preclusion applies.

1.      Legal Standards for Application of Res Judicata

Res judicata encompasses both claim preclusion and issue preclusion.  Paulo v. Holder, 669 F.3d 911, 917 (9th Cir. 2011).  Applicable here is issue preclusion which "applies when: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding."  Paulo, 669 F.3d at 917 (quoting Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir.2000)).  "Issue preclusion is designed to bar successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination."  Paulo, 669 F.3d at 918 (internal punctuation and citations omitted).

"When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata . . . ."  Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)).  The doctrine "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.  Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979).

However, there are instances where administrative estoppel is not intended by the legislature, such as "when a statutory purpose to the contrary is evident.  Astoria Fed. Sav.& Loan Ass'n, 501 U.S. at 108.  "Congress has discretion, based on its own weighing of policy goals, to prescribe the procedures by which an agency will perform its work and render decisions."  Duvall v. Atty. Gen. of U.S., 436 F.3d 382, 386 (3d Cir. 2006).  To determine if res

1    judicata should apply the Court references the enabling statute.  <u>Duvall</u>, 436 F.3d at 387.  "Only

2    if Congress required the agency to apply collateral estoppel may the federal courts enforce that

3    obligation."  <u>Id.</u>

4         It is well established that the burden is upon the alien to establish every aspect of his

5    eligibility for citizenship.  <u>I.N.S. v. Pangilinan</u>, 486 U.S. 875, 886 (1988).  Estoppel cannot

6    confer citizenship upon an alien because all the requirements for naturalization have not been

7    satisfied.  <u>Mustanich v. Mukasey</u>, 518 F.3d 1084, 1089 (9th Cir. 2008).  As relevant here, no

8    petitioner seeking naturalization can be found to have good moral character where he has been

9    convicted of an aggravated felony.  8 U.S.C. § 1101(f)(8).  Section 1429 provides that "the

10   findings of the Attorney General in terminating removal proceedings or in canceling the removal

11   of an alien pursuant to the provisions of this chapter, shall not be deemed binding in any way

12   upon the Attorney General with respect to the question of whether such person has established

13   his eligibility for naturalization as required by this subchapter."  8 U.S.C. § 1429.

14        2.   <u>Discussion</u>

15        Prior to 1990, district courts had the authority to naturalize aliens and the authority to

16   remove aliens was vested in the Attorney General.  <u>De Lara Bellajaro v. Schiltgen</u>, 378 F.3d

17   1042, 1045 (9th Cir. 2004), as amended (Sept. 1, 2004).  This resulted in a race between the alien

18   to gain citizenship and the Attorney General to deport.  <u>De Lara Bellajaro</u>, 378 F.3d at 1045.  To

19   address this issue, 8 U.S.C. § 1429 was enacted which provided that "no petition for

20   naturalization shall be finally heard by a naturalization court if there is pending against the

21   petitioner a deportation proceeding."  <u>Id.</u> (citing 8 U.S.C. § 1429 (1952)).  In 1990, Congress

22   enacted legislation vesting the authority to naturalize in the Attorney General.  <u>Id.</u>

23        Here, Defendants argue that 8 U.S.C. § 1429 provides that the findings of the Attorney

24   General in cancelling removal of an alien are not binding with respect to the question of whether

25   the alien has established eligibility for naturalization.  Defendants contend this is logical because

26   removal and naturalization proceedings are two separate adjudicative tracks before two

27   independent adjudicative entities.  Defendants also assert that the USCIS must independently

28   establish whether an applicant has met the statutory criteria for naturalization.

Plaintiff responds that issue preclusion need not be decided to resolve this motion, but notes that section 1429 is only applicable to subsequent determinations by the Secretary of the Department of Homeland Security.[6] Further, Plaintiff disagrees with virtually every factual and legal point raised by Defendants in arguing this issue. Plaintiff contends that it is necessary for the Court to review the administrative record of both proceedings to determine if the requirements of res judicata are met; and therefore, the motion should be denied.

During the September 20, 2016 hearing, Defendants argued that Congress has intended for naturalization to be an independent decision separate from any findings made during removal proceedings. The parties do not cite any, and the Court finds few, cases that address section 1429's language that findings made in cancellation of removal proceedings "shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization." The Sixth Circuit has addressed a plaintiff's argument that the Immigration Judge ("IJ") has the authority to assess the preliminary issue of prima facie eligibility for naturalization in a removal proceeding. In addressing section 1429, the court found that the language of the statute,

> in the very same provision that prohibits the consideration of naturalization applications removal proceedings are pending, seems to acknowledge that preliminary naturalization determinations can be made during removal proceedings, but sets out that those preliminary (or prima facie) determinations are distinct from the ultimate merits of an application for naturalization.

> In other words, although the statute prohibits DHS from considering naturalization applications while removal proceedings are pending, DHS might still be permitted to assess whether an alien is prima facie eligible for naturalization insofar as that decision affects the IJ's separate consideration of whether to terminate the alien's pending removal proceedings. And because § 1429 mandates that this preliminary determination will not be binding on DHS's subsequent consideration of the alien's application for naturalization, § 1429 does not preclude DHS from making the prima facie determination.

Shewchun v. Holder, 658 F.3d 557, 564–65 (6th Cir. 2011). However, the fact that the

---

[6] Plaintiff provides no legal authority to support his argument that section 1429 applies only to subsequent determinations by the Secretary of Homeland Security. In interpreting a statute, the Court looks to the language of the statute itself. Coronado-Durazo v. I.N.S., 123 F.3d 1322, 1324 (9th Cir. 1997). "Where the plain meaning of a provision is unambiguous that meaning is controlling, except in the 'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.' " Coronado-Durazo, 123 F.3d at 1324. Here, the language of the statute is unambiguous. The plain language of the statute is that findings in the termination or cancellation of removal proceedings are not binding on the Attorney General. Nothing in the statute can be construed to limit section 1429 to future determinations by the Secretary of Homeland Security.

1  preliminary determination can be considered during removal proceedings does not address the
2  issue here or change the analysis that these preliminary determinations are distinct from the
3  ultimate merits of the application for naturalization.

4  　　　In Mugomoke v. Hazuda, No. 13-CV-00984-KJM-KJN, 2014 WL 4472743, at *6 (E.D.
5  Cal. Sept. 11, 2014), the court addressed a plaintiff's argument that the USCIS was collaterally
6  estopped from finding him inadmissible for engaging in terrorist activity when the same issue
7  with the same facts had been previously considered and adjudicated during his asylum interview.
8  Mugomoke, 2014 WL 4472743 at *6.  As in this case, the defendants argued that collateral
9  estoppel does not apply in light of the statutory framework and the plaintiff could not meet the
10 elements of collateral estoppel.  Id.  In evaluating the statutory sections, the court found that each
11 section, 1158 (governing asylum requirements) and 1159(b) (governing adjustment status of an
12 alien) required an evaluation of admissibility separate from and independent from each other.  Id.
13 at *7.  The court found "it is evident that Congress provided for a two-stage evaluation: first, at
14 the time of the asylum proceeding and second, at the time of seeking permanent residency.  To
15 apply the doctrine and hold USCIS collaterally estopped from evaluating an asylee's eligibility at
16 the time he seeks permanent residency would contravene the legislated process."  Id.
17 Considering the statutes at issue it appears "Congress reasonably intended an asylee who may
18 eventually qualify for U.S. citizenship to be evaluated as to that person's eligibility twice, at
19 separate and independent stages."  Id.  The court found that collateral estoppel would not apply
20 to the separate proceedings.  Id. at *8.

21 　　　In a case similar to this, the Eastern District of Virginia was asked to review an
22 application for naturalization in which the plaintiff was found to have an aggravated felony
23 making him ineligible for naturalization.  Mobin v. Taylor, 598 F.Supp.2d 777, 784–85 (E.D.
24 Va. 2009).  The plaintiff had been convicted of making false statements under penalty of perjury
25 in an application for a Smog Check Mechanic License in California.  Mobin, 598 F.Supp.2d at
26 778.  In a removal hearing the Immigration Judge ("IJ") found that the conviction did not fall
27 within the scope of section 1101.  Id.  The government appealed and the Board of Immigration
28 appeals affirmed the IJ decision on a different ground finding the conviction was not an

1    aggravated felony for removal purposes.  Id.  The plaintiff then applied for naturalization and

2    was denied on the ground that his perjury conviction constituted an aggravated felony; and

3    therefore, he could not establish good moral character.  Id. at 779.  The court opined

> It is also important to note that the Attorney General did not declare a precedential
> legal rule in the context of Mobin's removal proceedings, as Mobin contends.
> Rather, the BIA—a delegate of the Attorney General—merely reached an
> adjudicatory decision in those proceedings based on its interpretation and
> application of certain facts to a statutory definition.  A predicate legal conclusion
> made by the BIA in removal proceedings is not binding on the Attorney General
> in naturalization proceedings; nor is it binding here given the applicable de novo
> review standard.  To hold otherwise—namely to bind the Attorney General in
> naturalization proceedings to conclusions of law made by the BIA in removal
> proceedings—is to ignore the fundamental and essential difference between
> removal and naturalization.  Congress wisely recognized this difference by
> directing that district court review of naturalization petitions proceed de novo and
> by making clear in § 1429 that "the findings of the Attorney General in
> terminating removal proceedings ... shall not be deemed binding in any way upon
> the Attorney General with respect to the question of whether such person has
> established his eligibility for naturalization." 8 U.S.C. § 1429 (emphasis added).
> Indeed, it is clear that the Attorney General does not consider himself bound by
> any legal predicate to the BIA's adjudicatory decision as he appears in this very
> action, by counsel, and takes the position that the BIA's conclusion that Mobin's
> state conviction was not an "aggravated felony" within the context of §
> 1101(a)(43) was erroneous.

15   Mobin, 598 F.Supp.2d at 784–85; see also Saliba v. Attorney General of United States, __ F.3d.

16   __, 2016 WL 3648469, *11 (3d Cir. July 8, 2016) (citing 8 U.S.C. § 1429 in finding that

17   "rescission, removal, and naturalization raise 'entirely distinct legal questions' ").

18        Similar to the Mugomoke and Mobin courts, this Court finds that the proceedings

19   governing cancellation of removal and naturalization are fundamentally and essentially different.

20   In setting forth the statutory scheme, Congress set forth separate evaluation processes to govern

21   removal and cancellation of removal proceedings and petitions for naturalization.  Removal and

22   cancellation of removal are governed by 8 U.S.C. § 1227 through 1229b.  Naturalization is

23   governed by 8 U.S.C. § 1427 which sets forth the statutory requirements of naturalization.

24   Section 1427 further provides that "[n]o finding by the Attorney General that the applicant is not

25   deportable shall be accepted as conclusive evidence of good moral character.  8 U.S.C. §

26   1427(d).

27        In enacting section 1429, Congress indicated that the findings made in the cancellation of

28   removal proceedings were not to have binding effect upon the naturalization proceedings.  In the

cancellation of removal proceedings here, the IJ made the decision that Plaintiff was eligible for cancellation of removal based upon his interpretation and application of facts to a statutory definition. Plaintiff argues that the IJ necessarily found that Plaintiff's conviction did not qualify as an aggravated felony, however he does not allege that any such actual finding was made. This is the same situation confronted by the <u>Mobin</u> court which found that a delegate of the Attorney General merely reached an adjudicatory decision in the removal proceedings based on its interpretation and application of certain facts to a statutory definition. Given the separate nature of the two proceedings and the differing purposes of findings that are to be made, it is reasonable that Congress did not intend to bind the naturalization adjudicator to findings made in a prior cancellation of removal proceeding.

The Court finds that Congress has indicated its intent that the findings made in the cancellation of removal hearing are not binding on the naturalization determination and issue preclusion should not apply in this instance. <u>Astoria Fed. Sav.& Loan Ass'n</u>, 501 U.S. at 108. Therefore, the findings made in the cancellation of removal hearing are not binding on the Attorney General when determining if Plaintiff is eligible for naturalization. Based upon this finding, Defendants' motion to dismiss the complaint is granted.

### D.    Leave to Amend

Plaintiff seeks leave to file an amended complaint if the motion to dismiss is granted. Rule 15(a) of the Federal Rules of Civil Procedure governs leave to amend. Fed. R. Civ. P. 15(a). "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" <u>Amerisource Bergen Corp. v. Dialysis West, Inc.</u>, 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." <u>Id</u>.

While Plaintiff argues that it is a legal impossibility for his sentence to remain four years after the reduction to a misdemeanor, to state a claim for relief Plaintiff must plead facts, not

1  legal conclusions.[7]  Although a court must accept as true all factual allegations contained in a
2  complaint, a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.

3        Here, Plaintiff was sentenced to a four year suspended sentence.  Although his conviction
4  was reduced to a misdemeanor, his request to reduce his sentence was denied.  Plaintiff seeks
5  leave to file an amended complaint, but the facts remain the same.  Plaintiff was sentenced to
6  four years and his request to reduce his sentence was denied.  Despite the reduction to a
7  misdemeanor under section 17(b), for federal immigration purposes, Plaintiff has been sentenced
8  to an aggravated felony.  Sarmiento, 603 F.App'x at 625.

9        In this instance, Plaintiff's conviction for a violation of California Penal Code section
10  273.5(a) qualifies as an aggravated felony under section 1101.  Section 1427(a) requires that to
11  be naturalized an individual must be a person of good moral character.  Plaintiff's conviction for
12  an aggravated felony precludes Plaintiff from being found to have good moral character; and he
13  is ineligible for naturalization.  See 8 U.S.C. 1101(f)(8) (no person who has been convicted of an
14  aggravated felony shall be found or considered to be a person of good moral character).  Since
15  Plaintiff is ineligible for naturalization, leave to amend would be futile.  Accordingly, the
16  complaint shall be dismissed without leave to amend.

17  / / /
18  / / /
19  / / /
20  / / /
21  / / /
22

---

23  [7] The Court notes that California Penal Code section 17(b) only allows for reduction to a misdemeanor in specified
circumstances.  As relevant here, section 17(b) provides that a conviction is a misdemeanor for all purposes "[w]hen
24  the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on
application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."
25  Cal. Pen. Code. § 17(b)(3).  Section 17(b) precludes a court from reducing a felony conviction to a misdemeanor
after a sentence has been imposed.  People v. Wood, 62 Cal.App.4th 1271 (1998).  California courts have held that
26  "a trial court may not reduce a felony to a misdemeanor under § 17(b)(3) when it has imposed and suspended
execution of sentence at the time probation was granted."  People v. Gold, No. C071112, 2014 WL 1022344, at *5
27  (Mar. 18, 2014), reh'g denied (Apr. 11, 2014), review denied (June 11, 2014) (unpublished) (citing Wood, 62
Cal.App.4th 1262.  Since Plaintiff was sentenced to a four year suspended sentence, his conviction was not eligible
28  for a reduction to a misdemeanor pursuant to section 17(b).

1

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Defendants' motion to dismiss the complaint is GRANTED;

2.    The Clerk of the Court is DIRECTED to lodge Plaintiff's alien file; and

3.    The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

Dated:    **September 22, 2016**

UNITED STATES MAGISTRATE JUDGE

16